IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


ANGELA M. FARLEY,                         09-CV-1211-BR

        Plaintiff,

                                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

        Defendant.


MERRILL SCHNEIDER
Schneider Law Offices
PO Box 14490
Portland, OR 97293
(503) 255-9092

        Attorneys for Plaintiff


DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**RICHARD A. MORRIS**
**THOMAS M. ELSBERRY**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2156

       Attorneys for Defendant


**BROWN, Judge.**

      Plaintiff Angela M. Farley seeks judicial review of a final
decision of the Commissioner of the Social Security
Administration (SSA) in which the ALJ denied Plaintiff's
applications for Disability Insurance Benefits (DIB) and
Supplemental Security Income (SSI) under Titles II and XVI of
the Social Security Act respectively.  This Court has
jurisdiction to review the Commissioner's decision pursuant to 42
U.S.C. § 405(g).

      Following a review of the record, the Court **AFFIRMS** the
decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

      Plaintiff filed her initial applications for DIB and SSI on
February 25, 2005.  Tr. 26, 101, 112-13.[1]  Her applications were

---

      [1] Citations to the official transcript of record filed by the
Commissioner on May 4, 2010, are referred to as "Tr."

2   -  OPINION AND ORDER

denied initially and on reconsideration.  Tr. 26-27, 36-38, 41-44.  An Administrative Law Judge (ALJ) held a hearing on October 30, 2008.  Tr. 528-76.  At the hearing, Plaintiff was represented by an attorney.  Tr. 528.  Plaintiff and a Vocational Expert (VE) testified at the hearing.  Tr. 528-76.

The ALJ issued an opinion on January 30, 2009, and found Plaintiff was not disabled and, therefore, was not entitled to benefits.  Tr. 16-25.  That decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 14, 2009.  Tr. 5-7.

<u>BACKGROUND</u>

Plaintiff was twenty-seven years old at the time of the hearing before the ALJ.  Tr. 532.  Plaintiff completed her education through the twelfth grade.  Tr. 532.  She has performed past work as an information clerk, fast-food cashier, customer-service representative, motel housekeeper, and relief-treatment facilitator.  Tr. 565-66.  Plaintiff alleges a disability onset date of July 1, 2003.  Tr. 48.

Plaintiff was diagnosed at age nine with Charcot-Marie-Tooth (CMT) disease, a degenerative neurological disorder that affects the structure and function of the nerves that serve the extremities.  Tr. 198-99, 220, 422, 498-99.  Plaintiff has a long history of associated pain and muscle cramping.  Tr. 72-74.

3  -  OPINION AND ORDER

Plaintiff has been diagnosed with CMT, low-back pain syndrome, and fibromyalgia.  Tr. 199, 204, 336, 368, 485.

As a child Plaintiff also suffered abuse by her stepfather and has received psychological treatment on a sporadic basis since she was fourteen years old.  Tr. 334-35, 416-17.  Plaintiff has been diagnosed with depression, anxiety disorder, post-traumatic stress syndrome, personality disorder, dysthymic disorder, and bipolar disorder.  Tr. 203, 211, 336, 368, 485.

Plaintiff alleges she is disabled due to depression; fatigue; panic attacks; and pain in her hands, arms, neck, lower back, and legs.  Tr. 40, 60-61, 72-74.  She alleges her impairments limit her ability to stand and to walk, to sit, to reach, to grip objects, to lift and to carry, to understand and to follow instructions, and to concentrate.  Tr. 40, 60, 74.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-23.


## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful

4   -   OPINION AND ORDER

activity by reason of any medically determinable physical or
mental impairment which . . . has lasted or can be expected to
last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of
developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841
(9th Cir. 2001).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec.
Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial
evidence means more than a mere scintilla, but less than a
preponderance, i.e., such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins*,
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.

2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).


## DISABILITY ANALYSIS

I.   **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*,
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404, subpart
P, appendix 1 (Listed Impairments).

    If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis engaged in by the ALJ when determining whether a
claimant can still work despite severe medical impairments.  An
improper evaluation of the claimant's ability to perform specific
work-related functions "could make the difference between a
finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

    In Step Four, the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform

7  -  OPINION AND ORDER

work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9ᵗʰ Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since her alleged onset date of July 1, 2003.  Tr. 18.  The ALJ noted Plaintiff worked since her alleged onset date, but such work did not rise to the level of substantial gainful activity.  Tr. 18.

At Step Two, the ALJ found Plaintiff has the severe impairments of CMT, a mood disorder, an anxiety disorder, a personality disorder, and fibromyalgia.  Tr. 18.

At Step Three, the ALJ concluded Plaintiff's physical and mental impairments do not singly or in combination meet or equal a Listed Impairment.  *See* 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff had the RFC to

> lift 20 pounds occasionally.  She can stand and walk 30 to 45 minutes at a time and 2 hours out of an 8-hour day.  She can sit 30 to 45 minutes at a time and 6 hours out of an 8-hour day.  She needs an option to sit or stand.  She can occasionally climb, balance, stoop, kneel, crouch and crawl.  She should avoid overhead reaching.  She is limited to simple, routine tasks involving less than close coordination with co-employees and involving minimal interaction with the public.  She should avoid production-oriented work.

Tr. 19.

At Step Four, the ALJ concluded Plaintiff is unable to perform any of her past relevant work.  Tr. 23.

At Step Five, the ALJ concluded Plaintiff had a sufficient RFC to perform jobs that exist in significant numbers in the national economy.  Tr. 24.  Specifically, the ALJ found Plaintiff had the ability to perform jobs that require light work such as garment sorter and office helper.  Tr. 24.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to include Plaintiff's manipulative limitations in the assessment of Plaintiff's RFC; (2) improperly discrediting the opinion of

9   -   OPINION AND ORDER

Plaintiff's mental-health provider, Brenda Paul, M.A.; and
(3) improperly discrediting Plaintiff's testimony.

**I.   Plaintiff's Manipulative Limitations.**

Plaintiff contends the ALJ erred by rejecting medical
evidence that establishes Plaintiff has significant manipulative
limitations resulting from her CMT.  In particular, Plaintiff
contends the record confirms Plaintiff's long-standing pain and
cramping in her hands, and the ALJ should have included such
limitations in her RFC.  Plaintiff points out that the ALJ must
assess a claimant's RFC based on "all of the relevant evidence."
20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

Plaintiff identifies a number of records from 1994-1996 that
are well before Plaintiff's alleged onset date and that
corroborate Plaintiff's complaints of fatigue and cramping in her
hands when she handles objects such as a pen for writing.  *See*
Tr. 410-24.  Plaintiff contends the evidence that predates her
onset date is relevant because it shows her condition has
worsened over time.  Plaintiff's medical records, however,
reflect Plaintiff's physical impairments improved with exercise
and activity.  Tr. 317-18, 358, 425-45.  The notes from
Plaintiff's treating psychologist, Thomas J. Heriza, M.D., also
demonstrate Plaintiff's mood disorder and depression improved
when she maintained a steady regimen of Lamictal.  Tr. 324, 328,
334-37, 341-44.

In her decision the ALJ summarized and considered the evidence from Plaintiff's medical sources as well as from lay sources within the relevant period of Plaintiff's alleged disability.  Tr. 19-23.  The Commissioner contends the ALJ may reject evidence that predates the relevant period and, therefore, properly limited her analysis to the medical evidence in the record that follows Plaintiff's alleged onset date.  The Court agrees.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008)("Medical opinions that predate the alleged onset of disability are of limited relevance.").  *See also Burkhart v. Bowen*, 856 F.2d 1335, 1340 n.1 (9th Cir. 1988)("The ALJ correctly rejected this evidence on the grounds that it is not probative both because it is prior to the relevant time period and inconclusive since the last notation was that the depression was improved.").

Plaintiff also contends the November 7, 2005, report of Occupational Therapist (OT) L. Votaw confirms Plaintiff has limited use of her hands, particularly when asked to perform repetitive tasks.  Tr. 220-29.  In the vocational assessment report, OT Votaw concluded Plaintiff would be capable of "less than sedentary" work and that she demonstrated an inability to tolerate an eight-hour work day.  Tr. 228-29.  Plaintiff contends OT Votaw's report is supported by Plaintiff's testimony and the statements of Plaintiff's mother, Kathy Ritch, which describe

11  -  OPINION AND ORDER

Plaintiff's inability to manipulate objects without pain and muscle cramping.  Tr. 74, 186, 545-46, 553.

The ALJ, however, noted Votaw is an occupational therapist and is not an acceptable medical source.  Tr. 22.  The ALJ also noted OT Votaw's report was inconclusive about Plaintiff's reliability and level of effort.  Tr. 22.  OT Votaw noted inconsistent pain responses by Plaintiff.  Tr. 225.  In fact, OT Votaw noted a concern on several occasions in vocational assessment about Plaintiff's level of effort, the potential for "non-organic symptomology," and possible "symptom magnification." Tr. 221-22, 227-29.  Thus, the ALJ gave the report "little weight" and found it did not establish manipulative limitations. Tr. 22.

Plaintiff, in turn, notes OT Votaw found Plaintiff's effort was "relatively reliable" despite concerns about symptom magnification and lack of effort.  Tr. 228.  OT Votaw, however, did not set out any particular manipulative limitations and instead concluded Plaintiff could perform reaching if at shoulder height or lower and could tolerate dexterity tasks at the waist level.  Tr. 229.  Although, the ALJ included in Plaintiff's RFC a limitation on overhead reaching, the ALJ concluded the "[e]vidence does not establish manipulative limitations." Tr. 21.

The ALJ also pointed to the opinion of Kevin J. Jamison,

M.D., a neurologist who examined Plaintiff on February 3, 2005. Tr. 198-99.  Dr. Jamison noted Plaintiff's complaints of fatigue, cramping, and pain in her extremities.  Tr. 198.  Dr. Jamison found Plaintiff had "some loss in intrinsic muscle bulk in the hands," but he concluded the strength in her arms was otherwise full and her "[f]ine finger movements are intact."  Tr. 199. Dr. Jamison found Plaintiff's symptoms were consistent with CMT, which causes "distal weakness of modest severity," but he concluded "the majority of [Plainitff's] complaints are likely to be unrelated."  Tr. 199.  Dr. Jamison noted Plaintiff's "somatoform tendencies" and her lack of pain behaviors.  Tr. 199.

The ALJ also noted the report by Plaintiff's Physical Therapist (PT) Jodi Flanagan in which she reported Plaintiff demonstrated inconsistent pain behavior and "signs of symptom magnification."  Tr. 445.  In fact, the physical therapy records reveal Plaintiff's physical symptoms improved over a course of physical therapy and home exercise.  Tr. 425-45.  Plaintiff reported exercising six days a week, losing 15 pounds over roughly six weeks, and gaining an increased range of motion. Tr. 425-26, 428-30.  Moreover, the physical therapy records demonstrate Plaintiff was consistently performing exercises including various forms of abdominal crunches, rowing with twenty pounds, triceps presses with thirty pounds, several minutes of cardiovascular exercise on the elliptical machine, biceps curls

with twenty pounds, overhead catch of a weighted ball, and a number of lower extremity exercises using an exercise ball. Tr. 428-37.  PT Flanagan does not provide any indication in her physical therapy notes that Plaintiff is unable to manipulate objects with her hands.

The ALJ ultimately gave significant weight to the opinion of the conclusions of Disability Determination Services (DDS)[2] physician Martin Kehrli, M.D., who did not set out any manipulative limitations in his assessment of Plaintiff's RFC. Tr. 212-19.

In summary, the Court finds the ALJ's decision to not include manipulative limitations in Plaintiff's RFC is supported by substantial medical evidence in the record, and the ALJ did not err by failing to rely on Plaintiff's medical records for a period approximately seven years before Plaintiff's alleged onset date.  Thus, the Court concludes the ALJ did not err when the ALJ rejected the vocational assessment of OT Votaw, a nonacceptable medical source, or the lay testimony when the ALJ found Plaintiff does not have manipulative limitations.

**II.   The Opinion of Brenda Paul.**

Plaintiff contends the ALJ erred when she gave "little

---

[2] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

weight" to the opinion of Plaintiff's treating counselor, Brenda
Paul.  Plaintiff concedes Paul is not an acceptable medical
source under the regulations, but she is considered among the
"other sources" listed in the Social Security regulations.  *See*
20 C.F.R.  §§ 404.1513(d)(1), 416.913(d)(1).  The ALJ may reject
the opinions of such sources by giving reasons that are "germane"
to that source.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.
1993).  Plaintiff contends the ALJ erred when she rejected Paul's
opinion because Paul has a long history of counseling Plaintiff,
and her assessment of Plaintiff's mental impairments is supported
by the record as a whole.

Paul provided therapy to Plaintiff on nineteen occasions
from April 30, 2007, to October 24, 2008.  Tr. 307.  Paul
diagnosed Plaintiff with bipolar mood disorder and borderline
personality disorder.  Tr. 307.  She noted Plaintiff's symptoms
include, *inter alia*, depressed mood, anxiety, suicidal ideation,
impulsivity, anhedonia, fatigue, and difficulty managing social
relations.  Tr. 308-09.  Paul concluded Plaintiff's symptoms
would worsen in a competitive work setting and opined Plaintiff
would miss more than two days of work per month due to her
impairments.  Tr. 309.

As noted, the ALJ pointed out that Paul is not an acceptable
medical source, and the ALJ gave her opinion less weight than the
opinions of Plaintiff's treating physician, Diane Nowak, M.D.,

and treating psychologist, Dr. Heriza, because Paul's opinion was inconsistent with their treatment records.  Tr. 23.  In any event, The ALJ may properly afford a nonmedical source less weight than a medical source.  *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).

Dr. Heriza's treatment records reflect significant improvement in Plaintiff's psychological symptoms as a result of a stable medication routine.  Tr. 313, 324, 337, 342-44. Dr. Heriza treated Plaintiff's psychological impairments on several occasions during roughly the same period that Plaintiff was seeing Paul in 2007 and 2008.  Dr. Heriza's treatment records refer to the improvements in mood stabilization provided by Plaintiff's use of Lamictal, including Plaintiff's statement that the drug provided more help for her depression than other types of interventions.  Tr. 313, 324, 337.  Specifically, Dr. Heriza noted Plaintiff presented on January 31, 2008, with "no worrisome symptoms of depression or mood swings."  Tr. 324.  On July 24, 2008, Plaintiff "voiced no complaints," had been engaged in increased activity, and had "no significant shifts in mood." Tr. 313.  Paul's records reflect Plaintiff was taking her medication appropriately, exercising more, and increasing her activities with a demonstrated corresponding improvement in her mood during this period.  Tr. 314, 317-19, 322-23.

The ALJ also concluded the treatment records of Dr. Nowak

contradicted Paul's description of Plaintiff's significant symptoms due to her psychological impairments.  Tr. 23. Dr. Nowak treated Plaintiff on several occasions during 2007 and 2008at which time she noted Plaintiff's use of Lamictal. Tr. 358-71.  On five occasions in 2007 and 2008, Dr. Nowak reported her mental-status examination revealed Plaintiff had "no depression, anxiety, or agitation."  Tr. 358, 363, 381, 386, 397. Dr. Nowak also noted Plaintiff had been working on increasing her activity and had lost weight.  Tr. 358.  In addition, the Court notes several other physicians and nurses reported a similar lack of depression or anxiety symptoms in corroboration with Dr. Nowak's reports:  Jerrod C. Mitzel, M.D. (Tr. 482); Daniel Smithson, M.D. (Tr. 368, 480); Cynthia Caraballo, M.D. (Tr. 271); Linda Ellis, F.N.P. (Tr. 376); and Karen Andrews, F.N.P. (Tr. 389).

Thus, the record reflects the ALJ summarized the relevant evidence in the record and resolved the conflict between the treatment records of Plaintiff's health providers.  Tr. 19-23. *See also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001)(The ALJ is responsible for determining credibility and for resolving conflicts and ambiguities in the medical evidence.).

On this record, therefore, the Court concludes the ALJ provided reasons germane to Brenda Paul's opinion supported by substantial evidence in the record for assigning little weight to

Paul's opinion.

**III. Plaintiff's Credibility.**

Although she did not do so in her Opening Brief, Plaintiff contends in her Reply that the ALJ erred when she rejected Plaintiff's testimony with respect to the intensity, persistence, and limiting effects of her symptoms because the ALJ did not provide clear and convincing reasons for doing so.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.  If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester*, 81 F.3d at 834)).  General assertions that the claimant's testimony is not credible are insufficient. *Id*.  The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra*, 481 F.3d at 750

18  -  OPINION AND ORDER

(quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's testimony lacked credibility on the following grounds:  (1) reports from physicians suggest Plaintiff magnifies her symptoms, (2) Plaintiff's active lifestyle belies her claims of disability, (3) Plaintiff's failure to comply with treatment undermines her complaints of disabling pain, and (4) Plaintiff's poor work history undermines her assertion that she was disabled.

The Court has already addressed the record with respect to symptom magnification.  As noted, OT Votaw, Dr. Jamison, and PT Flanagan each raised concerns that Plaintiff was exaggerating her symptoms.  Tr. 199, 221-22, 227-29, 445.  Thus, the ALJ's conclusion that Plaintiff's credibility is undermined with respect to the severity of her symptoms is supported by substantial evidence in the record.

The ALJ also noted Plaintiff's ability to care for four children, to perform some work and volunteer activity, to perform household chores, to use the computer to write poetry and a monthly newsletter, to read, and to manage her finances undermine her complaints of total disability.  Tr. 21-22.  The record reflects Plaintiff is also attending writing classes at a college and has demonstrated significant physical capabilities in her physical-therapy treatment that suggests she is capable of more activity than her testimony reflects.  Tr. 425-45, 534, 547-58.

For example, Plaintiff testified at the hearing that she could walk no more than 15 to 30 minutes "and that's pushing it" and could only hold a pencil "at most a few minutes."   Tr. 547, 561. Plaintiff, however, exhibited the ability to perform physical-therapy exercises on multiple occasions for 50 minutes and reported working out at home six days a week.  Tr. 425-26, 431, 433, 436.  As part of her routine, for example, Plaintiff performed multiple repetitions of bicep curls with 20-pound weights.  Tr. 428-31.  Flanagan also noted Plaintiff performed exercises without complaints of pain.  Tr. 441.  Thus, the ALJ's conclusion that Plaintiff's testimony as to the intensity, persistence, and limiting effects of her symptoms is undermined by Plaintiff's daily activities and is supported by substantial evidence in the record.

     The record also reflects Plaintiff has not adhered to her physicians' prescribed treatment regimens.  Tr. 207, 549.  In addition, Plaintiff alleges constant, disabling pain, but the record reflects she no longer takes over-the-counter medication, and her physicians do not prescribe stronger medications. Tr. 547.  The Ninth Circuit has held:

> Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated. *See, e.g., Fair*, 885 F.2d at 603.  In the case of a complaint of pain, such failure may be probative of

> credibility, because a person's normal
> reaction is to seek relief from pain, and
> because modern medicine is often successful
> in providing some relief.

*Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

Accordingly, the Court finds the ALJ's reasons for discrediting Plaintiff's subjective symptom testimony are clear and convincing. The Court, therefore, concludes on this record that the ALJ did not err in her evaluation of Plaintiff's credibility because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for discrediting Plaintiff's testimony.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 11th day of February, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

21  -  OPINION AND ORDER